```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

| | | |
|---|---|---|
| GEICO GENERAL INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:12-cv-40 |
| | : | |
| TIMOTHY DOWD and MERRY KINDRED | : | |
| as Administratrix of the Estate of | : | |
| KATHRYN BORNEMAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION and ORDER**

In this insurance coverage dispute, Plaintiff Government Employees Insurance Company ("GEICO") seeks a ruling that it is not obligated to defend or indemnify its insured Defendant Timothy Dowd in connection with any claim brought by the estate of Kathryn Borneman ("Estate") stemming from injuries Borneman suffered as a result of a motor vehicle collision.  Defendant Estate has counterclaimed for a declaration of coverage, for breach of contract and breach of the implied covenant of good faith and fair dealing.  GEICO has moved for summary judgment; the motion, ECF No. 43, is **denied.**

**Factual Background**[1]

On the evening of December 26, 2010, Timothy Dowd drove recklessly while attempting to elude the City of Burlington

---

[1] The following facts are presented in the light most favorable to Dowd and the Estate, as the nonmoving parties.

police.  In the course of this escape attempt he ran a red light and collided with a vehicle driven by Kathryn Borneman, who was killed on impact.  Dowd was driving a 2000 Jeep Grand Cherokee that did not belong to him.

For several months before the collision, Dowd had an intimate relationship with Sarah Yandow.  He described the relationship as primarily sexual, but that they were also friends.  They ran errands together and did favors for one another.  They were frequent passengers in each others' vehicles.  Yandow drove Dowd's car on at least one occasion, but before December 26 Dowd had never driven the Jeep.

Yandow referred to the Jeep as her car and told Dowd that she was the owner.  She testified at a deposition that she bought it.  She kept a considerable amount of her personal belongings in the car, and had discussions with Dowd about its need for repairs.  At one point she told him that her father had helped her get a new starter for the car.  Dowd believed that Yandow owned the car, and Yandow admitted that he had reason to believe that she was the owner.  In fact the jeep was owned by Jeremy Martin, Yandow's live-in boyfriend, whom Dowd did not know.

On the evening of December 26, Dowd and Yandow had made plans to spend time together.  Yandow came to Dowd's home for dinner, but before they sat down to eat Yandow announced that she had to run an important errand to drop something off.  She

suggested Dowd accompany her. He understood that they would be back shortly, and left without his cell phone. It was a cold night, and he was not dressed for an outing, although he did put on a jacket. They drove from Hinesburg, Vermont, to Burlington, Vermont, and Dowd came to realize that it would not be a short trip. When they reached Yandow's destination, a place unfamiliar to Dowd, Yandow did not park in front of her friend's house, but on another street. She said that she'd be back in five minutes. She expected him to wait, and Dowd waited in the car with the engine running. Dowd did not know which house belonged to Yandow's friend, and he did not notice which house she entered.

Inside, Yandow obtained a Percocet from one of her friends, took it and socialized with her friends. After waiting nearly forty minutes, Dowd became annoyed, and decided to drive back to Hinesburg and wait for Yandow to call him. Although he struggled with the decision to leave because he did not want to seem rude, he believed that he had permission to drive her car. He stated that he would not have driven it had he thought he was doing it without her permission. Dowd thought that had their positions been reversed, Yandow would have been justified in taking his vehicle. He believed that she would know that he had gone home, and she would have been able to get in touch with him.

Yandow admits that she is not very good at estimating time, frequently changes plans without warning and is usually late.

When Yandow found her car gone she was shocked. She thought she had been inside only twenty-five minutes, and she couldn't understand why he hadn't waited. Had it been forty minutes she felt he would have gotten annoyed and left her there. She did not call the police because she thought he had simply gone home mad. She started calling Dowd at his home after she thought he'd had time to get there because she knew that he didn't have his cell phone with him. She called Jeremy Martin that night, but she did not say that her car had been taken without her permission. She did not tell the friend with whom she stayed that night or anyone else that her car had been taken without her permission. She intended to have a friend drive her to Hinesburg in the morning so that she could retrieve her car.

During Dowd's attempt to drive back to Hinesburg he struck and killed Kathryn Borneman.

The automobile insurance policy issued to Dowd by GEICO provides for liability coverage to Dowd while operating a "non-owned auto" "with the permission, or reasonably believed to be with the permission of the owner and within the scope of that permission." GEICO Policy No. 4202940575 ("Policy") at 4, ECF No. 43-8.

## Discussion

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences drawn in his or her favor. *E.g.*, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute concerning "a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Weinstock*, 224 F.3d at 41 (quoting *Anderson*, 477 U.S. at 248).

Under Vermont law,[2] courts "construe insurance contracts to give effect to the parties' intent by looking at the plain language of the contract." *Hathaway v. Tucker*, 2010 VT 114, ¶14, 14 A.3d 968, 973. Disputed terms receive their "'plain, ordinary and popular meaning.'" *Id.* (quoting *Northern Sec. Ins. Co. v. Doherty*, 2009 VT 27, ¶ 8, 987 A.2d 253, 256 (entry order)). Any ambiguity in the contract's language will be resolved in the insured's favor, but the insurer is entitled to the benefit of unambiguous provisions that limit or exclude coverage. *See*

---

[2] Subject matter jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332(a), and the parties do not dispute that the substantive law of Vermont applies. *See also* Policy Amendment Vermont 2, § V(15) (providing that the policy and any amendments and endorsements are to be interpreted according to the laws of the state of Vermont).

*Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 9, 862 A.2d 251, 256; *Norman v. King*, 659 A.2d 1123, 1124 (Vt. 1995); *Am. Fid. Co. v. Elkins*, 215 A.2d 516, 518 (Vt. 1965). There is no suggestion that the contract language is ambiguous, and therefore the Court's sole task at this point is to determine whether GEICO has sustained its burden of demonstrating an absence of genuinely disputed material facts.

It is undisputed that the Jeep Grand Cherokee fits the Policy's definition of a "non-owned auto," and that Dowd was operating a non-owned auto at the time of the accident. At issue is whether Dowd's policy affords him coverage based on its limitation that his use "must be with the permission or reasonably believed to be with the permission, of the owner and within the scope of that permission." Policy at 4.

There is likewise no dispute that Dowd did not have permission of the title holder to the Jeep, Jeremy Martin, to use the car, that Dowd reasonably believed Yandow to be the owner of the car, and that he did not have the express permission of Yandow to use the car. GEICO contends that, assuming Yandow was the apparent owner of the Jeep, no reasonable juror could conclude that Dowd reasonably believed he had her permission to use the Jeep or that his conduct in driving away without her that night was within the scope of that permission. The Estate contends that this issue requires a factual evaluation, and must

be submitted to a jury.

Permission or consent for another to use a vehicle may be express or implied. *See Norman*, 659 A.2d at 1124-25; *Cutler v. Travelers Ins. Co.*, 412 A.2d 284, 285 (Vt. 1980); *cf. Shulins v. New England Ins. Co.*, 360 F.2d 781, 786 (2d Cir. 1966) (noting that "Vermont has adopted a reasonably broad view of the word 'permission' in the omnibus clause of insurance policies"). Dowd must be able to show that a reasonable juror could conclude that he had permission to use the vehicle, or a reasonable belief that he had permission. *See Am. Fid. Co. v. N. British & Mercantile Ins. Co.*, 204 A.2d 110, 113 (Vt. 1964). If he can make this showing, then he receives the benefit of a presumption that his use was within the scope of that consent. *Id.* To overcome the presumption, GEICO would have to show that no reasonable juror could conclude that Dowd's actual use of the car was within the scope of Yandow's permission. *See id.; accord Ins. Co. of N. Am. v. Millers' Mut. Ins. Ass'n of Ill.*, 427 A.2d 354, 355 (Vt. 1981) ("To overcome this presumption a party must show . . . that the operation of the car involved a major deviation from the consent given.").

The Estate argues that "reasonable belief" denotes a subjective standard of determining permission, and that the Policy supplies coverage because Dowd subjectively believed that

7

Yandow would have been willing to permit him to drive the Jeep back to Hinesburg under the circumstances. For the most part the cases the Estate cites, however, more accurately describe a mixed subjective/objective standard: the reasonableness of a user's subjective belief that he or she had permission from the owner to use the vehicle. *See Empire Indem. Ins. Co. v. Allstate Cnty. Mut. Ins. Co.*, 617 F. Supp. 2d 456, 465 (N.D. Tex. 2008) (citing cases holding that the analysis includes both a subjective and objective inquiry); *State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 299 A.2d 704, 712 (N.J. 1973) (holding that "reasonably believed" required a fact-finder to ascertain whether the user "believe[d], with reason, that the owner was . . . willing"); *Blount v. Kennard*, 612 N.E.2d 1268, 1270 (Ohio Ct. App. 1992) (holding that trial court appropriately considered subjective and objective factors in determining whether a driver had a reasonable belief under the policy language). *But see Brumfield v. United Servs. Auto. Ass'n*, 616 So. 2d 876, 877 (La. Ct. App. 1993) (holding that "reasonable belief" in a non-owned automobile clause "indicates a subjective standard of determining permission, so that a permittee could be covered if he reasonably believed that he had permission of the owner").

The plain language of the Policy indicates that the standard is not a strictly subjective one. Had the Policy stated that use of a non-owned auto was covered when the insured believed he had

8

permission, the Estate would have a stronger argument. The inclusion of the word "reasonably" places a reasonableness requirement on the insured's belief, however. Although the Vermont Supreme Court has not had occasion to consider the appropriate standard in the context of non-owned auto insurance coverage, it has construed reasonable belief in another context to require that a belief be subjectively reasonable. In *State v. Boglioli*, 2011 VT 60, ¶ 15, 26 A.3d 44, 52, a defendant convicted of voluntary manslaughter objected to the jury's instruction on self defense, which charged that "every person has the right to use a reasonable amount of force to defend himself if he actually reasonably believes two things: (1) that he is in immediate danger of bodily harm; and (s) that the use of such force was necessary to avoid the danger." The defendant argued that the instruction improperly introduced an objective element into what should have been a subjective inquiry into the honesty of his belief that he was in imminent peril. The Supreme Court disagreed, holding that "requiring that a belief be *subjectively reasonable* is possible and in fact, required" when ascertaining whether an individual claiming self defense had an honest belief of imminent peril. *Id.*

This Court believes that the Vermont Supreme Court, if faced with the issue in an insurance coverage dispute concerning whether an insured had a reasonable belief, would join the

9

majority of state courts that have employed a subjective-objective standard, and hold that the user's subjective belief that he had permission to use a non-owned automobile must be "grounded in reason." *Boglioli*, 2011 VT 60, ¶ 15 (quoting *State v. Wheelock*, 609 A.2d 972, 976 (Vt. 1992)); *see, e.g.*, *Gov't Emps. Ins. Co. v. Kinyon*, 173 Cal. Rptr. 805, 811 (Cal. Ct. App. 1981); *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174, 189-90 (Ky. Ct. App. 2006); *Armstrong v. Thrifty Car Rental*, 933 So. 2d 235, 240 (La. Ct. App. 2006); *Am. Motorists Ins. Co. v. LaCourse*, 314 A.2d 813, 817-18 (Me. 1974); *State Farm*, 299 A.2d at 712.

Employing this standard calls for an inquiry into Dowd's state of mind: did he in fact believe, with reason, that Yandow was willing for him to use her car? An individual's state of mind is ordinarily an issue for the trier of fact to determine. *See In re Fink*, 2011 VT 42, ¶ 38, 22 A.3d 461, 474; *Doe v. Forrest*, 2004 VT 37, ¶ 56, 853 A.2d 48, 69 ("We have cautioned about granting summary judgment 'in any cases in which the resolution of the dispositive issue requires determination of state of mind, as the fact finder normally should be given the opportunity to make a determination of the credibility of witnesses, and the demeanor of the witness whose state of mind is at issue.'") (quoting *Barbagallo v. Gregory*, 553 A.2d 151, 151 (Vt. 1988) (entry order)); *see also Aetna Cas. & Sur. Co. v.*

10

*Nationwide Mut. Ins. Co.*, 392 S.E.2d 377, 380 (N.C. 1990) (holding that summary judgment was improper on the issue of coverage because "reasonable belief is a question of fact to be determined by a jury").

Here there are facts from which a jury could conclude that Dowd had a subjective belief grounded in reason that Yandow was willing for him to use her car: an intimate relationship that included giving each other rides; Dowd's having given explicit permission on at least one occasion for Yandow to use his car; and Yandow's never having expressed an unwillingness for him to use her car. There are facts from which a jury could conclude that Dowd's use of the Jeep on the night in question was within the scope of that permission: among them Yandow's own testimony that if she had kept him waiting forty minutes she thought that he would have gotten angry and left her, and Dowd's testimony that she was gone approximately forty minutes.

To be sure, upon hearing the facts at trial a jury could conclude that Dowd did not have a reasonable belief that he had Yandow's permission to use the Jeep and/or that the scope of any permission did not include stranding her at her friend's house. At summary judgment however, the Court rules only that, drawing all reasonable inference in the Estate's favor, GEICO has not demonstrated that no jury could conclude that Dowd had a reasonable belief that he had permission, nor has it demonstrated

11

that no jury could conclude that Dowd's use of the Jeep was within the scope of that permission.  Consequently GEICO has not shown as a matter of law that there is no coverage under the Policy.

GEICO's Motion for Summary Judgment, ECF No. 43, is **denied.**

Dated at Burlington, Vermont this 18th day of December, 2012.

/s/ William K. Sessions III  
William K. Sessions III  
District Judge