# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF VERMONT

GEICO GENERAL INSURANCE COMPANY,     :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :    Case No. 2:12-cv-40
                                     :
TIMOTHY DOWD and MERRY KINDRED       :
as Administratrix of the Estate of   :
KATHRYN BORNEMAN,                    :
                                     :
          Defendants.                :
                                     :

## MEMORANDUM OPINION and ORDER

The parties seek a ruling concerning how the jury is to determine scope of permission with respect to the non-owned automobile clause in Defendant Timothy Dowd's automobile insurance policy ("Policy") issued by Plaintiff GEICO General Insurance Company ("GEICO").  *See* Mot. of Estate of Kaye Borneman in Supp. of Jury Instruction Regarding Initial Permission Rule, ECF No. 116; Mot. For Clarification & to Reconsider the Order on Mots. in Limine, ECF No. 119.

The Policy provides liability coverage for Dowd when using an automobile not owned by him if the use was "with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission."  Policy 4, ECF No. 43-8.  The parties do not dispute that Vermont law applies to this issue, and that there is no Vermont case law directly on point.

Defendant Estate argues first that the Policy language "within the scope of that permission" is ambiguous, and must be construed in favor of the insured.  Although it is true that ambiguous policy terms are construed in favor of coverage, *see, e.g.*, *N. Sec. Ins. Co. v Doherty*, 2009 VT 27, ¶ 8, 987 A.2d 253, 256 (entry order), the Court must first be able to determine that a disputed term is in fact ambiguous.  *Towns v. Vt. Mut. Ins. Co.*, 716 A.2d 65, 67 (Vt. 1999).  That the parties dispute the correct legal interpretation of contract language does not render the language ambiguous.  *See Isbrandtsen v. North Branch Corp.*, 556 A.2d 81, 85 (Vt. 1988).

The Vermont Supreme Court has more than once construed policy language limiting automobile liability coverage to use within the scope of permission without any hint that such language was ambiguous.  *See Ins. Co. of N. Am. v. Millers' Mut. Ins. Ass'n of Ill.*, 427 A.2d 354, 355 (Vt. 1981); *Nat'l Grange Mut. Ins. Co. v. Churchill*, 234 A.2d 334, 335-36 (Vt. 1967).  In the absence of a showing that the language is ambiguous in this context, the Court reads the terms according to their "'plain, ordinary and popular meaning.'"  *Hathaway v. Tucker*, 2010 VT 114, ¶ 14, 14 A.3d 968, 973 (quoting *N. Sec. Ins. Co.*, 2009 VT 27, ¶ 8).

Nearly fifty years ago the Vermont Supreme Court discussed how to determine whether a driver fell within a policy's

definition of an insured, and whether it should adopt a rule for
that determination.   In *American Fidelity Co. v. North British &
Mercantile Insurance Co.*, the Court described the rules under
consideration:

> The conversion rule requires that permission have been
> given for the particular use being made of the vehicle
> at the time of the accident.  The minor deviation rule,
> as its name implies, holds that a small deviation from
> the use encompassed by the permission granted will not
> bar coverage, but a major one will.  The initial
> permission rule requires only that there be permission
> to use the vehicle in the first instance to provide
> coverage, whatever the actual use made of the vehicle.

*Am. Fidel. Co. v. N. British & Mercantile Ins. Co.*, 204 A.2d 110,
112 (Vt. 1964).

The *American Fidelity* Court rejected the strict conversion
rule, but refused to adopt either the initial permission or the
minor deviation rule, preferring instead to adopt a framework for
determining whether a particular use was within the scope of
permission:

> In other words, with a showing that the vehicle was
> placed in the hands of the operator by consent, a
> presumption arises that the particular use of which the
> vehicle was being put was within the scope of that
> consent as measured by the law.  The overcoming of this
> presumption requires evidence establishing that consent
> had been expressly withdrawn prior to the actual use,
> or that the actual use was so far afield from the
> purpose of the loan of the vehicle as to amount to, at
> best, a temporary tortious conversion.

*Id.* at 113.

The parties urge this Court to choose between the two rules
that the Vermont Supreme Court refused to adopt in *American*

3

*Fidelity*:  the Estate advocates for the "initial permission"
rule; GEICO advocates for the "minor deviation" rule.

GEICO argues that the Vermont Supreme Court in fact adopted
the minor deviation rule in *American Fidelity*, which is not
strictly accurate.  In the subsequent decision of *Insurance
Company of North America v. Millers' Mutual Insurance Ass'n of
Illinois,* however, the Court equated the *American Fidelity*
framework with an application of the minor deviation rule:

> To overcome [the] presumption [that the use is with
> consent] a party must show that the consent had been
> expressly withdrawn, or that the operation of the car
> involved a major deviation from the consent given. . .
> . A minor deviation from the purpose of the loan would
> be within the scope of the permission.

*Ins. Co. of N. Am.*, 427 A.2d at 355.

The Estate notes, correctly, that the *American Fidelity*
Court was interpreting an "omnibus" clause, not a non-owned
automobile clause.  *Insurance Company of North America* was also
an omnibus clause case.  The omnibus clause in an automobile
insurance policy provides coverage for users of an insured
vehicle who are using the vehicle with permission, whereas the
non-owned automobile clause provides coverage for the insured
when using another's vehicle with permission.  *See, e.g.*, 8A
Couch on Insurance § 118:36 (3d ed. 2012).  The Estate points to
case law from jurisdictions that recognize a distinction between
determining the scope of permission depending upon whether the
insurance coverage follows the car (omnibus clause) or follows

4

the driver (non-owned automobile clause), according a broader interpretation to scope of permission in non-owned automobile clause cases.  The rationale is that in covering an owned vehicle the company relies on the judgment of its insured in giving permission to use the car, whereas in covering an insured when using a non-owned vehicle the driver is the same individual to whom the insurer agreed to extend coverage in the first place. *See, e.g.*, *Am. Motorists Ins. Co. v. LaCourse*, 314 A.2d 813, 816 (Me. 1974) ("The purposes of extending coverage to additional insureds in the two clauses suggest that they were intended to have different interpretations."); *State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 299 A.2d 704, 712 (N.J. 1973) (discussing the rationale for a more liberal construction of non-owned automobile clauses); *Maryland Cas. Co. v. Hassell*, 426 S.W.2d 133, 138 (Ky. 1967) (applying the initial permission rule to a non-owned vehicle clause, and acknowledging that the minor deviation rule applied to an omnibus clause); Couch, *id*.  The Estate also argues that many jurisdictions have adopted the initial permission rule, citing *Millbank Mutual Insurance Co. v. United States Fidelity & Guaranty Co.*, 332 N.W.2d 160, 166-67 & n.9 (Minn. 1983) (citing cases) and *Wiglesworth v. Farmers Insurance Exchange*, 917 P.2d 288, 292 & n.1 (Colo. 1996) (citing cases), both of which decisions construed omnibus clauses.

Whatever may be the merits of the rationales for adopting a

broad initial permission rule for determining the scope of permission in a non-owned automobile clause, this Court may predict the outcome in an unsettled area of state law, but must not "adopt innovative theories that may distort established state law." *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2005). The Vermont Supreme Court has given no indication that it would favor construing identical policy language differently depending on whether it appeared in an omnibus clause or a non-owned automobile clause.[1]  Moreover, the Vermont Supreme Court has referred to a non-owned automobile clause as an omnibus clause, suggesting that it may not regard a distinction between the two as particularly significant. *See Nat'l Grange Mut. Ins. Co. v. Churchill*, 234 A.2d 334, 336 (Vt. 1967).

The *American Fidelity* Court, eschewing classifications or labels, created a framework for subsequent finders of fact.  As it observed, "[s]ometimes the distinguishing qualities of . . . classifications coincide with the essential differences between situations.  And sometimes they do not." *Am. Fidel.*, 204 A.2d at 112.  It endorsed a case-by-case approach, acknowledging the fact-intensive nature of the inquiry. *See id.; see also id.* at 113.

---

[1]  The Policy's omnibus clause covers "any other person using the [owned] auto with your permission.  The actual use must be within the scope of that permission."  Policy 4.  Although the Policy's non-owned automobile clause affords coverage to an insured who has permission or who reasonably believes he has permission, the scope of permission language is identical.

In accordance with existing case law and the Vermont Supreme Court's case by case approach, the Court will instruct the jury on the scope of permission that GEICO has the burden to establish by a preponderance of the evidence that permission to use the vehicle had been expressly withdrawn, or that the use of the vehicle was so far from the purpose of the permitted use as to amount to a major deviation from that use.  The Estate's motion, ECF No. 116, is **denied.**

The parties also dispute the nature and extent of evidence that the jury may consider to determine whether Dowd's use of the vehicle was within the scope of Yandow's permission.  GEICO intends to introduce evidence concerning the manner in which Dowd operated the vehicle, specifically that he ran from the police, and that the police pursued him for some time.  GEICO argues that this evidence would tend to prove that Dowd's use of the vehicle was so far from the purpose of any permitted use as to amount to a major deviation.  GEICO would draw a distinction between evidence that would tend to prove the way in which Dowd drove the car—deliberately and recklessly—and evidence that would tend to prove the use to which he put the car—to attempt to elude the police.  GEICO agrees that the former purpose for the evidence is irrelevant to the coverage determination, but that the latter purpose for the evidence is relevant to a determination that Dowd's use of the vehicle was not within the scope of Yandow's

permission.

A decision on this point cannot be made in a vacuum; the Court must evaluate the evidence at the time it is proffered. Without knowing the evidence that will tend to establish that Dowd had permission to use the vehicle, and without knowing the evidence that will tend to establish Dowd's intended use of the vehicle, the Court cannot determine whether the evidence of the police chase is admissible.  Moreover, should the evidence of the police chase become admissible, evidence concerning the outcome of the police chase—the crash that took the life of the Estate's decedent—may very well also become admissible as a consequence.

Evidence of Dowd's intention is the critical factor.  If the evidence shows that Dowd took Yandow's vehicle intending only to drive home, the evidence of what occurred to interrupt his attempt to get home would be irrelevant.  If the evidence shows that Dowd took Yandow's vehicle for some other purpose, or intended to use the vehicle recklessly, the intended manner of usage would be relevant to determine whether the use exceeded the scope of permission.  *See Rainville v. Farm Bureau Mut. Auto. Ins. Co.*, 83 A.2d 599, 600 (Vt. 1951) (noting that if a son took his father's automobile intending "to keep it for an unreasonable time; or intending to use it in a reckless, wanton or injurious manner; or intending to leave it to mere chance whether the owner ever recovered it or not" the taking would be the equivalent of

theft); *see also Pepin v. Allstate Ins. Co.*, 2004 VT 18, ¶ 16, 848 A.2d 269, 274 (explaining that the *Rainville* language requires "an initial wrongful taking with the intent to permanently deprive the owner of [her] property").  The motion for clarification, ECF No. 119, is **denied.**

The parties shall refrain from referring to the police chase or the accident scene in voir dire or during their opening statements.

Dated at Burlington, Vermont, this _19th_ day of August, 2013.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
District Court Judge